AS:BW
F. #2020R01134

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -

SHIMSHON MANDEL,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

I N D I C T M E N T

Cr. No. **1:22-cr-00043(DG)(RML)**

(T. 18, U.S.C., §§ 981(a)(1)(C),
982(a)(1), 982(b)(1), 1343, 1957(a), 2
and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

INTRODUCTION

      At all times relevant to this Indictment, unless otherwise indicated:

I.     The Defendant and Relevant Individuals and Entities

      1.    The defendant SHIMSHON MANDEL was a citizen of the United States and a resident of Brooklyn, New York.

      2.    The Wife, an individual whose identity is known to the Grand Jury, was a citizen of the United States and a resident of Brooklyn, New York. The Wife was the late spouse of the defendant SHIMSHON MANDEL.

      3.    The Insured, an individual whose identity is known to the Grand Jury, was a citizen of the United States and a resident of Brooklyn, New York. The Insured was the Wife's aunt and the Wife owned a life insurance policy covering the Insured (the "Insurance Policy").

      4.    The Investor, an individual whose identity is known to the Grand Jury, was a citizen and resident of the United States. The Investor was a business partner of the Wife and the defendant SHIMSHON MANDEL.

1

5.      The Insurance Provider, a company the identity of which is known to the Grand Jury, was a New York-based insurance provider.  The Insurance Provider issued the Insurance Policy.

6.      Parent Company 1, a company the identity of which is known to the Grand Jury, was a financial services company based in Holland.  Parent Company 1 was the parent company of the Insurance Provider until in or about August 2014.

7.      Parent Company 2, a company the identity of which is known to the Grand Jury, was a financial services company based in New York, New York.  Parent Company 2 replaced Parent Company 1 as the parent company of the Insurance Provider in or about September 2014.

II.      The Fraudulent Scheme

8.      In or about September 2008, the Wife purchased the Insurance Policy from the Insurance Provider.  Although the Wife was the named owner of the Insurance Policy, the defendant SHIMSHON MANDEL was the functional manager of the policy on behalf of the Wife.

9.      Originally, the death benefit of the Insurance Policy was $6,000,000 and the quarterly premium payments were $96,120.  In or about October 2008, the Wife amended the Insurance Policy to increase the death benefit to $10,000,000.  The quarterly premium payments correspondingly increased to $160,200.

10.      The Wife and the defendant SHIMSHON MANDEL were frequently in danger of failing to meet the premium payment requirements on the Insurance Policy.  For example, in or about and between September 2010 and April 2011, Parent Company 1 sent the Wife letters advising that the Insurance Policy was in danger of lapsing.

11.     In or about 2011, the defendant SHIMSHON MANDEL was introduced to the Investor and approached the Investor with a business proposition.  MANDEL proposed that the Investor assume responsibility for making the Insurance Policy premium payments in exchange for a percentage of the Insurance Policy death benefit.

12.     In or about August 2011, the Wife and the Investor entered a contract pursuant to which the Investor agreed to make the premium payments in exchange for either: (i) 80 percent of the death benefit if the Insured died before August 1, 2012; or (ii) 85 percent of the death benefit if the Insured died after August 1, 2012.

13.     Despite the contract between the Wife and the Investor, the Investor was not added as an official owner of the Insurance Policy.  Rather, the Wife remained the sole owner of the Insurance Policy and the Investor provided the funds for the Insurance Policy's quarterly premium payments to the Wife and the defendant SHIMSHON MANDEL, with the understanding that the Wife and MANDEL would in turn use the funds provided by the Investor to make the quarterly premium payments on the Insurance Policy.

14.     To that end, the defendant SHIMSHON MANDEL periodically e-mailed the Investor invoices from Parent Company 1 and Parent Company 2 and requested that the Investor wire or write a check for the amount due and send the money to MANDEL.  MANDEL represented to the Investor that upon receipt of the funds from the Investor, MANDEL would pay Parent Company 1 or Parent Company 2.  For example, on or about January 17, 2014, MANDEL emailed the Investor, "Attached please find [Parent Company 1] [l]etter[.]  It would be best if you can wire like last time.  Same [b]ank information.  If [y]ou wire on Friday[,] I can wire on Tuesday to [Parent Company 1]."  The letter referred to by MANDEL was an invoice

requesting payment of $150,044.86.  On or about January 21, 2014, the Investor wrote a check to MANDEL for the requested amount, which MANDEL deposited.

15.     Despite the fact that the Investor had assumed responsibility for the premium payments, the Wife and the defendant SHIMSHON MANDEL continued to be in danger of failing to meet their premium payment requirements.  In or about and between January 2012 and January 2017, Parent Company 1 and Parent Company 2 sent the Wife multiple letters advising that the Insurance Policy was in danger of lapsing due to nonpayment of premiums.

16.     On or about July 5, 2017, Parent Company 2 sent the Wife an invoice seeking $203,403.83 in premium payments on the Insurance Policy.  The defendant SHIMSHON MANDEL forwarded a copy of this invoice to the Investor, who subsequently remitted to MANDEL $203,403.83.  On or about August 17, 2017, MANDEL misrepresented to the Investor that Parent Company 2 had received this payment of $203,403.83.  In fact, Parent Company 2 never received this payment.

17.     On or about August 7, 2017, Parent Company 2 sent the Wife a final warning that the Insurance Policy was in danger of lapsing.  The letter stated that if Parent Company 2 did not receive $203,403.83 by September 4, 2017, the Insurance Policy would lapse.

18.     On or about September 5, 2017, Parent Company 2 sent the Wife a letter advising that Parent Company 2 had "terminated coverage [on the Insurance Policy] due to nonpayment of premium."  The letter also included instructions on how the Wife could apply to have the Insurance Policy reinstated.

19.     Parent Company 2 subsequently gave the Wife a "one-time extension" until September 8, 2017 to make the necessary premium payments.  On or about September 25,

4

2017, Parent Company 2 sent the Wife a letter advising that it had not received the necessary payment by September 8, 2017, and stating again that the policy had lapsed. This letter also included instructions on how the Wife could apply to have the Insurance Policy reinstated.

20.     On or about October 17, 2017, the defendant SHIMSHON MANDEL sent Parent Company 2 a letter seeking reinstatement of the Insurance Policy. On or about October 19, 2017, Parent Company 2 sent MANDEL a letter stating that he would have to go through the "Formal Reinstatement" process. The letter also stated that the Insurance Policy remained inactive. On or about December 20, 2017, MANDEL sent Parent Company 2 another letter seeking reinstatement of the Insurance Policy. On or about January 3, 2018, Parent Company 2 sent MANDEL a letter denying his reinstatement request.

21.     After the Insurance Policy was terminated, the defendant SHIMSHON MANDEL misrepresented to the Investor that the Insurance Policy was still active and fraudulently solicited and received from the Investor over $2,000,000 in purported premium payments. Specifically, MANDEL created fake premium payment invoices purporting to be from Parent Company 2 and sent these fake invoices to the Investor. Parent Company 2 never sent MANDEL these invoices because the Insurance Policy had already been terminated and Parent Company 2 was no longer soliciting premium payments on the Insurance Policy.

22.     The defendant SHIMSHON MANDEL also misrepresented to the Investor that he had passed on the Investor's payments to Parent Company 2 and misrepresented to the Investor that Parent Company 2 had received MANDEL's payments. In fact, Parent Company 2 never received these funds. Instead, MANDEL kept the money sent to him by the Investor and used it for personal expenses.

23.     On at least one occasion, the defendant SHIMSHON MANDEL deposited checks fraudulently obtained from the Investor or fraudulently retained by MANDEL at banks located in Brooklyn, New York, within the Eastern District of New York.

24.     Instead of using the funds fraudulently obtained from the Investor or fraudulently retained by the defendant SHIMSHON MANDEL to pay the premium on the Insurance Policy, MANDEL spent the money on various personal expenses.  For example, on a number of occasions, MANDEL received payments from the Investor and then used those funds to pay American Express and Discover credit card bills, make purchases at retailers like Brooks Brothers, Macy's and the Gap, make mortgage payments and pay utility bills.  MANDEL also used funds received from the Investor to make cash withdrawals, and transferred other funds received from the Investor to other businesses owned by MANDEL.

25.     The defendant SHIMSHON MANDEL also engaged in monetary transactions in excess of $10,000 using the funds fraudulently obtained from the Investor.  For example, on or about February 12, 2018, the Investor paid MANDEL $213,136.89.  MANDEL deposited these funds into a bank account that, prior to the deposit, had a balance of $528.61.  On or about February 16, 2018, MANDEL made a $42,700 transfer from this account to another bank account he controlled.

## COUNTS ONE THROUGH TEN
(Wire Fraud)

26.     The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

27.     On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant SHIMSHON MANDEL, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Investor, and to obtain money and

property from the Investor by means of one or more materially false and fraudulent pretenses,

representations and promises, and, for the purpose of executing such scheme and artifice, did

transmit and cause to be transmitted, by means of wire communication in interstate and foreign

commerce, writings, signs, signals, pictures and sounds, as set forth below:

| COUNT | APPROXIMATE DATE | DESCRIPTION |
|---|---|---|
| ONE | August 17, 2017 | MANDEL emailed the Investor a fake receipt purportedly sent by Parent Company 2 reflecting receipt of approximately $203,403.83, which MANDEL had previously obtained from the Investor. |
| TWO | October 18, 2017 | MANDEL emailed the Investor a fake document purportedly sent by Parent Company 2 soliciting approximately $212,827.31, which the Investor later remitted to MANDEL. |
| THREE | January 9, 2018 | MANDEL emailed the Investor a fake document purportedly sent by Parent Company 2 soliciting approximately $213,136.89, which the Investor later remitted to MANDEL. |
| FOUR | April 15, 2018 | MANDEL emailed the Investor a fake document purportedly sent by Parent Company 2 soliciting approximately $218,757.91, which the Investor later remitted to MANDEL. |
| FIVE | July 23, 2018 | MANDEL emailed the Investor a fake document purportedly sent by Parent Company 2 soliciting approximately $218,772.68, which the Investor later remitted to MANDEL. |
| SIX | October 15, 2018 | MANDEL emailed the Investor a fake document purportedly sent by Parent Company 2 soliciting approximately $237,865.36, which the Investor later remitted to MANDEL. |
| SEVEN | January 10, 2019 | MANDEL emailed the Investor a fake document purportedly sent by Parent Company 2 soliciting approximately $238,747.31, which the Investor later remitted to MANDEL. |
| EIGHT | April 11, 2019 | MANDEL emailed the Investor a fake document purportedly sent by Parent Company 2 soliciting approximately $238.644.90, which the Investor later remitted to MANDEL. |
| NINE | July 11, 2019 | MANDEL emailed the Investor a fake document purportedly sent by Parent Company 2 soliciting approximately $241,927.30, which the Investor later remitted to MANDEL. |

| COUNT | APPROXIMATE DATE | DESCRIPTION |
|-------|------------------|-------------|
| TEN | October 13, 2019 | MANDEL emailed the Investor a fake document purportedly sent by Parent Company 2 soliciting approximately $259,468.91, which the Investor later remitted to MANDEL. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT ELEVEN
(Money Laundering)

28.    The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

29.    On or about February 15, 2018, within the Eastern District of New York and elsewhere, the defendant SHIMSHON MANDEL did knowingly and intentionally engage in one or more monetary transactions in and affecting interstate commerce in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit: wire fraud, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a) and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE THROUGH TEN

30.    The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts One through Ten, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

31.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

8

         (a)     cannot be located upon the exercise of due diligence;

         (b)     has been transferred or sold to, or deposited with, a third party;

         (c)     has been placed beyond the jurisdiction of the court;

         (d)     has been substantially diminished in value; or

         (e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ELEVEN

32.     The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Eleven, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

33.     If any of the above-described forfeitable property, as a result of any act of omission of the defendant:

         (a)     cannot be located upon the exercise of due diligence;

         (b)     has been transferred or sold to, or deposited with, a third party;

         (c)     has been placed beyond the jurisdiction of the court;

         (d)     has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described in this forfeiture

allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2020R01134
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

SHIMSHON MANDEL

Defendant.

## INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(b)(1), 1343, 1957(a), 2 and
3551 et seq.; T. 21, U.S.C., § 853(p); T. 21, U.S.C. § 2461(c))

*A true bill.*

_____ *Foreperson*

*Filed in open court this* _____ *day, of* _____ *A.D. 20* _____

_____ *Clerk*

*Bail, $* _____

***Benjamin L. Weintraub, Assistant U.S. Attorney***
***(718) 254-6519***