

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SME:BW
F. #2020R01134

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 30, 2024

By ECF

The Honorable Diane Gujarati
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United States v. Shimshon Mandel,
Criminal Docket No. 22-43 (DG)

Dear Judge Gujarati:

The government respectfully submits this letter in anticipation of the February 13, 2024 sentencing in the above-captioned case. On August 7, 2023, defendant Shimshon Mandel pleaded guilty to the sole count of a superseding information, which charged him with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. For the reasons set forth below, the government respectfully submits that a term of incarceration below the advisory range set forth in the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") plus the imposition of a fine within the applicable Guidelines range would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case. The government also respectfully requests that the Court, pursuant to 18 U.S.C. §§ 3663A and 3664, impose an Order of Restitution to the sole victim (the "Victim") in this case in the amount of $2,283,552.40.[1] Further, the government requests that the Court enter a Final Order of Forfeiture, pursuant to 21 U.S.C. §§ 853(a) and (p), in the amount of $316,447.60.

## I. Background

In September 2008, the defendant's late wife purchased a life insurance policy on the life of her aunt. See Presentence Investigation Report ("PSR") ¶¶ 4, 7. The defendant managed the policy on behalf of his late wife. Id. ¶ 4. Originally, the death benefit on the policy was $6 million and the quarterly premium payments were $96,120. Id. ¶ 5. In October 2008, the

[1] On January 29, 2024, the government filed under seal on the docket a written victim impact statement. (ECF No. 54). The government has been advised that the Victim will not be making an oral victim impact statement at sentencing.

policy was amended and the death benefit was increased to $10 million and the quarterly premium payments were increased to $160,200. Id.

Over time, the defendant and his late wife had increasing difficulty paying the premiums. On several occasions between September 2010 and April 2011, they were advised by the insurance company that the policy was in danger of lapsing. Id. ¶ 6. In 2011, the defendant was introduced to the Victim and presented the Victim with a business proposition. Id. ¶ 6. The defendant proposed that the Victim would assume responsibility for making the premium payments in exchange for a percentage of the death benefit. Id. In August 2011, the defendant's late wife and the Victim entered a contract pursuant to which Victim agreed to make the premium payments in exchange for either (i) 80 percent of the death benefit (i.e., $8 million), if the insured died before August 1, 2012; or (ii) 85 percent of the death benefit (i.e., $8.5 million), if the insured died after August 1, 2012. Id. ¶ 7. The defendant and the Victim agreed that the defendant's late wife would remain the owner of record of the insurance policy, but that the Victim would provide the defendant with the quarterly premium payments, which would then be paid to the insurance company. Id.

Despite the fact that the Victim had assumed responsibility for the premium payments in August 2011, the defendant continued to be late on the premium payments. Id. ¶ 9. As a result, on multiple occasions after the Victim assumed responsibility for making the premium payments, the defendant was notified that the policy was in danger of lapsing due to nonpayment of premiums. Id. On August 7, 2017, the defendant received a final warning that the policy was in danger of lapsing. Id. ¶ 11. After the defendant failed to make the necessary payments to avoid the policy lapsing, the insurance company terminated the policy in late-September 2017. Id. ¶ 12.

On October 17, 2017, the defendant sent the insurance company a letter seeking reinstatement of the policy. Id. ¶ 13. On October 19, 2017, the insurance company sent the defendant a letter stating that he would have to go through the "Formal Reinstatement" process. Id. On December 20, 2017, the defendant faxed the insurance company another letter seeking reinstatement. Id. On January 3, 2018, the insurance company sent the defendant a letter denying his reinstatement request. Id.

The defendant did not inform the Victim that the policy had been terminated, but rather misrepresented to the Victim that the policy remained active. Id. ¶ 14. Between August 2017 – October 2010, the defendant solicited and received over $2 million from the Victim in purported premium payments after the policy had been terminated. Id. ¶ 14. The defendant created fake premium invoices purporting to come from the insurance company and sent those to the Victim. Id. In total, the defendant fraudulently obtained from the Victim $2,283,552.40 in purported premium payments that the defendant never passed on to the insurance company, but rather pocketed for his own use. Id. ¶¶ 16, 18.

The defendant was indicted on January 28, 2022 and charged with 10 counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of money laundering, in violation of 18 U.S.C. § 1957(a). On August 7, 2023, the defendant pleaded guilty to the sole count of a superseding information, charging conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. On August 16, 2023, the Court accepted the defendant's guilty plea. (ECF No. 44).



II.  Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable [U.S. Sentencing Guidelines ("Guidelines" or "USSG")] range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [it] may not presume that the Guidelines range is reasonable.  [It] must make an individualized assessment based on the facts presented."  Id. at 50 (citation and footnote omitted).  Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct; [and]
> >
> > (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation.  See 18 U.S.C. § 3553(a)(2)(D).  Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence.  The district court must also "remain cognizant of them throughout the sentencing process."  Gall, 552 U.S. at 50 n.6.

## III. Guidelines Calculation and Objections to the PSR

The government calculates the defendant's offense level as set forth below:

| | | |
|---|---|---|
| Base Offense Level (§§ 2X1.1(a), 2B1.1(a)(2)) | | 6 |
| Plus: | Loss Exceeds $1,500,000 (§ 2B1.1(b)(1)(I)) | +16 |
| Minus: | Acceptance of Responsibility (§ 3E1.1(a), (b)) | -3 |
| Minus: | Zero-point offender (§ 4C1.1(a)) | -2[2] |
| Total: | | 17 |

The adjusted total offense level is 17, which, based on a criminal history category of I, carries an advisory Guidelines range of 24 to 30 months' incarceration.[3]

The Court may also impose a fine of the greater of either $250,000 or the twice the gross gain or loss. See 18 U.S.C. §§ 3571(b)(3) and (d).[4] Here, the loss to the Victim was $2,283,552.40. Accordingly, the maximum imposable fine is $4,567,104.80. Because the total offense level is 17, the advisory Guidelines fine range is between $10,000 - $95,000. See U.S.S.G. § 5E1.2(c)(3).[5]

## IV. A Term of Incarceration Below the Guidelines Range and Imposition of a Fine are Appropriate

The government respectfully submits that imposition of a term of incarceration below the Guidelines range plus the imposition of a fine within the Guidelines range is sufficient, but not greater than necessary, to achieve the goals of sentencing. The defendant's criminal conduct here was serious – he orchestrated a complex, multi-year, multi-million-dollar fraud in

---

[2] The government submits that this reduction is applicable. As of the date of this submission, the PSR has not been amended to reflect the applicability of this reduction. Accordingly, the government objects to paragraphs 34 and 70 of the PSR, insofar as they state that the total offense level is 19, rather than 17.

[3] The government objects to paragraph 70 of the PSR, insofar as it states that the Guidelines range is 30 to 37 months' incarceration.

[4] The government objects to paragraph 75 of the PSR, insofar as it states the maximum fine is $250,000 and does not include the alternative fine based on gain or loss, reflected in 18 U.S.C. § 3571(d).

[5] The government objects to paragraph 77 of the PSR, insofar as it states that the Guidelines fine range is $10,000 - $100,000.

which he fabricated purported invoices and receipts in order to obtain over $2 million from the Victim, rather than simply coming clean to the Victim and admitting that the insurance policy had lapsed. As noted in Probation's sentencing recommendation, although the defendant claims that his decision to defraud the Victim was motivated by financial struggles, the defendant's substantial assets belie that assertion. Further, after the initial fraud on the Victim – i.e., the first instance in which the defendant sent the Victim a fabricated document – the defendant continued to perpetuate the fraud for years. The defendant was not an unwitting participant in the fraud – he concocted the scheme and executed it meticulously for many years. A term of incarceration is necessary in order to achieve the goals of general deterrence and to send a message that perpetrators of financial fraud cannot simply get away with their crime by paying forfeiture and restitution.

That said, the government credits the defendant's assertion that he was under a tremendous amount of personal stress during the critical months when he let the insurance policy lapse and first concocted the fraud scheme. He had recently been diagnosed with prostate cancer and his wife was also suffering from various physical ailments that ultimately were related to her subsequent pancreatic cancer diagnosis. [REDACTED], as well as the fact that the defendant has already paid the full forfeiture amount and transferred to his attorney the full restitution amount, militate in favor of a sentence of incarceration below the applicable Guidelines range. On the other hand, the fact that the defendant appears to possess considerable financial assets (although he has not returned the Personal Financial Statement or Business Financial Form to the United States Probation Office), see PSR ¶ 67, indicates that he is capable of paying a fine. Accordingly, an imposition of a fine within the Guidelines range is also appropriate here.

## V. Restitution

Under 18 U.S.C. § 3663A, the Court shall impose restitution. In United States v. Zangari, 677 F.3d 86, 93 (2d Cir. 2012), the Second Circuit held that restitution must be measured according to the victim's actual loss, not the defendant's gain. Moreover, in calculating restitution, "these losses need not be mathematically precise," and "[a] reasonable approximation will suffice, especially in cases in which an exact dollar amount is inherently incalculable." United States v. Rivernider, 828 F.3d 91, 115 (2d Cir. 2016) (internal quotation marks omitted).

The government respectfully submits that the Court should order the defendant to pay restitution in the amount of $2,283,552.40 to the Victim. See PSR ¶ 79.

## V. Request for Partial Sealing

The government respectfully requests that this letter be partially filed under seal.

[REDACTED]

## VI. Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a term of incarceration below the advisory Guidelines range and impose a fine within the Guidelines range. The government also requests that the Court enter an Order of restitution in the amount of $2,283,552.40 and a Final Order of Forfeiture in the amount of $316,447.60.

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York

By: *Benjamin Weintraub*
Benjamin Weintraub
Assistant United States Attorney
(718) 254-6519